**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARCUS CREIGHTON, CONSTANCE GREEN, DON ROMAN, DANIELLE SYDNOR, DARRYL FYALL, CHARLES SWINDELL, and VERNON HOBBS, on behalf of themselves and all others similarly situated, | Case No. 15-CV-08321 (WHP) |
| Plaintiffs, | Hon. Judge William H. Pauley III |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

June 14, 2017

Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, Illinois 60606
(312) 431-0888 (tel)
(312) 431-0228 (fax)

# TABLE OF CONTENTS

Page

Introduction ................................................................................................................1

A.   Overview of the Litigation .............................................................................1

B.   Discovery ........................................................................................................2

C.   MetLife's Sale of its Premier Client Group ...................................................3

D.   The Settlement Process ...................................................................................3

E.   The Terms of the Settlement ...........................................................................4

Argument ...................................................................................................................6

I.   The Settlement is Substantially Fair, Reasonable, and Adequate ..................7

A.   Continue Litigation Would be Complex, Expensive, and Protracted ............7

B.   The Lack of Opposition to the Settlement Among Class Members Demonstrates Its Fairness to the Class ...........................................................9

C.   The Substantial Investigation and Discovery Completed Gave Class Counsel Ample Basis for Evaluating the Settlement ......................................9

D.   The Class Faced Serious Risks in Establishing Liability and Damages and Obtaining and Maintaining Class Certification .......................................10

E.   Given the Size of the Settlement Fund and the MassMutal Acquisition, MetLife's Ability to Withstand a Grater Judgment Is Irrelevant ................12

F.   The Outstanding Monetary Relief of this Settlement Weighs Strongly in Favor of the Settlement ................................................................................13

II.   The Settlement Class Meets All the Requirements of Rule 23 .....................15

A.   The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(3) ...........15

B.   The Notice Provided to the Class Satisfies Due Process .............................18

Conclusion ...............................................................................................................19

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Declaration of Linda D. Friedman |
| 2 | Transcript of Preliminary Approval Hearing |
| 3 | Declaration of Lynn P. Cohn |
| 4 | Declaration of John C. Coffee, Jr. dated Nov. 19, 2013, in *McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-cv-6583 (N.D. Ill.) |
| 5 | Seyfarth Shaw LLP, *13th Annual Workplace Class Action Litigation Report* (2017) (excerpts) |
| 6 | *Pan v. Qualcomm Inc.*, No. 16-cv-1885, Dkt. 21-1 (excerpts) (S.D. Cal.) |
| 7 | *Wellens v. Daiichi Sankyo*, No. 13-cv-581, Dkt. 189  (N.D. Cal.) |
| 8 | *Cote v. Wal-Mart Stores, Inc.*, No. 15-cv-12945, Dkt. 70 (excerpts), 83 (D. Mass.) |
| 9 | *Brand v. Comcast Corp.*, No. 11-cv-8471, Dkt. 163 (excerpts) (N.D. Ill.) |
| 10 | *Brown v. Medicis Pharm. Corp.*, No. 13-cv-1345, Dkt. 52 (D.D.C.) |
| 11 | *Aviles v. BAE Sys. Norfolk Ship Repair, Inc.*, No. 13-cv-418, Dkt. 106 (excerpts), 111 (E.D. Va.) |
| 12 | *Coates v. Farmers Group, Inc.*, No. 15-cv-1913, Dkt. 140 (excerpts), 148 (N.D. Cal.) |
| 13 | *Moore v Publicis Groupe*, No. 11-cv-1279, Dkt. 610 (S.D.N.Y.) (excerpts) |
| 14 | Proposed Final Approval Order |

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 18

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................... 6

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374
(S.D.N.Y. Aug. 6, 2010) .................................................................................... 7

*Calibuso v. Bank of America*, 299 F.R.D. 359, 362, 364 (E.D.N.Y. 2014) .................... 14

*Calibuso v. Bank of America*, 893 F. Supp. 2d 374, 392-94 (E.D.N.Y. 2012) ............. 11

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................ 18

*Castagna v. Madison Square Garden, L.P.,* No. 09-cv-10211 LTS HP,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ...................................................... 10

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ........................................................ 6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..................................... 7

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir.1995) ........................ 16

*Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 328 F. Supp. 2d 865
(N.D. Ill. 2004).................................................................................................. 17

*Dial Corp. v. News Corp.*, 317 F.R.D. 426 (S.D.N.Y. 2016) ...................................... 7

*Diaz v. E. Locating Serv. Inc.*, No. 1:10-CV-04082, 2010 WL 5507912
(S.D.N.Y. Nov. 29, 2010) ................................................................................ 12

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................... 12, 14

*Glover v. Crestwood Lake Section 1 Holding Corp.*, No. 89 CIV. 5386, 1991
WL 64172, (S.D.N.Y. Apr. 10, 1991) ........................................................ 6, 8, 9

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................. 7

*Gonzalez v. Pritzker*, No. 10-cv-3105 (FM) (S.D.N.Y.)........................................ 13, 14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007
WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................. 6

*In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005)................... 18

*In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL
3500655 (S.D.N.Y. July 15, 2014) .............................................................. 16, 17

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) .................................... 16

*Johnson v. Brennan*, No. 10 civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).............. 16

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............. 7, 10

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................. 17

*Martens v. Smith Barney, Inc.*, 1998 WL 1661385 (S.D.N.Y. July 28, 1998) ............. 17

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2012 WL 5278555 ...................... 17

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir.) ................. 8

*Mills v. Capital One, N.A.*, No. 14 civ. 1937, 2015 WL 5730008 (S.D.N.Y.
Sept. 30, 2015)................................................................................................. 9

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)........................................................ 14

*Price v. New Jersey Transit*, No. L-263-14 (N.J. Super. Ct.) ........................................................ 13

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................ 11

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014) ............................ 13

*Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-cv-0403, 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ...................................................................................................................................... 16

*Slaughter v. Wells Fargo,* Case No. 13-cv-6368 (N.D.Ill.) ......................................................... 17

*Torres v. Gristede's Operating Corp.*, No. 08–CV–8531, 2010 WL 5507892  (S.D.N.Y. Dec. 21, 2010) ........................................................................................................................................ 6

*Wal-Mart* ...................................................................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes* ................................................................................................... 11

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005)................................ 6

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................... 8, 9

## Statutes

28 U.S.C. § 1715(d) ...................................................................................................................... 19

## Other Authorities

Clermont, Kevin M. & Stewart J. Schwab, *Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse?*, 3 HARV. L. & POL'Y REV. 103, 104 (2009) ............................... 10

H.R. 985 – *Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017* ..................................................................................................................................... 12

Kotkin, Minna J., *Outing Outcomes: An Empirical Study of Confidential Employment Discrimination Settlements*, 64 WASH. & LEE L. REV. 111, 148 (2007) .................................. 10

Laura Beth Nielsen et al., *Individual Justice or Collective Legal Mobilization? Employment Discrimination Litigation in the Post Civil Rights United States*, 7 J. Empirical Legal Stud. 175, 196 (2010)........................................................................................................................... 10

MassMutual Press Release, *MassMutual Completes Acquisition of the MetLife Premier Client Group* (July 5, 2016)...................................................................................................................... 3

MetLife Press Release, *MassMutual to Acquire MetLife's Retail Advisor Force* (Feb. 29, 2016) 3

Wendy Parker, *Lessons in Losing: Race Discrimination in Employment*, 81 Notre Dame L. Rev. 889 (2006)................................................................................................................................... 10

## Rules

Rule 23 ................................................................................................................................. passim

This proposed Settlement follows hard-fought litigation in three federal district courts and tough negotiations spanning more than a year. If approved, the Settlement will provide outstanding monetary relief to African American Financial Services Representatives ("FSRs") formerly employed by Metropolitan Life Insurance Company ("MetLife"), to be allocated to class members based on an innovative method designed to take account of class members' individual circumstances and experiences. Negotiated by experienced counsel at arm's length and with the assistance of a professional mediator, this Settlement is fair, reasonable, and adequate, and it meets all the criteria for final approval under Federal Rules of Civil Procedure 23(a), (b)(3), and (e).

## Factual and Procedural Background

### A. Overview of the Litigation

Class Representative Marcus Creighton first consulted and retained Class Counsel in December 2013. (Ex. 1, Friedman Decl. ¶ 33.) After investigating the claim, Class Counsel proposed that the parties attempt to mediate the dispute. (*Id.* ¶ 33.) MetLife agreed, and the parties attended a mediation with Judge David Coar (Ret.) on September 30, 2014. (*Id.* ¶ 33.) Unfortunately, the mediation was unsuccessful. (*Id.* ¶ 33.) After further investigation, Creighton filed a representative charge of race discrimination and retaliation with the Equal Employment Opportunity Commission in February 2015. (*Id.* ¶ 33.) Three months later, Creighton filed the original class action complaint in this action before the U.S. District Court for the Northern District of Illinois. (Dkt. 1.) The complaint alleged class-wide race discrimination and retaliation in violation of 42 U.S.C. § 1981, and informed MetLife that Creighton would amend his complaint to add individual and class claims under Title VII of the Civil Rights Act of 1964, once he had exhausted his administrative remedies. (*Id.*)

1

MetLife moved to dismiss the complaint for lack of personal jurisdiction and improper venue, or in the alternative to transfer the case to the Eastern District of Missouri, which Plaintiff opposed. (Dkt. 14, 22.) The case was transferred instead to the Southern District of Illinois. (Dkt. 25.) MetLife again moved to dismiss the complaint for lack of personal jurisdiction and improper venue, or to transfer the case to the Eastern District of Missouri, and Plaintiff again opposed the motion. (Dkt. 30, 47.) The Southern District of Illinois court denied the motion but transferred the case to this Court. (Dkt. 52.)

MetLife then filed a letter motion announcing its intent to file a third motion to dismiss, this time to seek dismissal of all class allegations and certain individual claims, which Plaintiff opposed. (Dkt. 54, 57.) After a pre-motion conference before the Court on December 11, 2015, MetLife decided instead to answer the complaint. (Dkt. 76-77.) On April 29, 2016, Plaintiff amended his complaint to include claims of intentional and disparate impact discrimination under Title VII and to add six more named plaintiffs representing varying levels of experience as FSRs. (Dkt. 86.) MetLife answered the amended complaint on June 24, 2016. (Dkt. 90.)

## B. Discovery

The parties exchanged broad, extensive, and thorough discovery relating to the merits, damages, class certification, and MetLife's key employment policies and practices. (Ex. 1 ¶ 37.) This included voluminous nationwide data and information about FSR compensation, account transfers, teaming, pooling, and distribution of leads. (*Id.* ¶ 37.) Among other things, MetLife produced workforce and compensation data, including substantial data regarding employment and job history (title and office), earnings, team participation, licensing and registration, and relevant compensation plans. (*Id.* ¶ 38.) Class Counsel reviewed and analyzed discovery regarding key policies and practices, including teaming, leads and referrals, compensation, and

account distribution. (*Id.* ¶ 38.) Plaintiffs also retained an expert labor economist who conducted extensive statistical analyses of five years of MetLife's workforce data. (*Id.* ¶ 38.) Fact discovery was scheduled to close on January 30, 2017. (Dkt. 88.)

### C.  MetLife's Sale of its Premier Client Group

On February 29, 2016, one year after this action commenced, MetLife announced it had agreed to sell its Premier Client Group – in which the Plaintiffs and the putative class worked – to Massachusetts Mutual Life Insurance Company ("MassMutual").[1] MassMutual announced the completion of the transaction on July 5, 2016.[2] MassMutual required all former MetLife FSRs who wished to continue with the new entity to become independent contractors rather than employees, and to sign mandatory arbitration agreements and class action waivers. As a result, the MassMutual transaction effectively curtailed both front pay relief and the class period as of the July 1, 2016 closing date. (Ex. 1 ¶ 47.) In addition, although the Class Representatives had hoped to improve opportunities for future African American FSRs by reforming MetLife's policies and practices, the MassMutual acquisition dashed these hopes and rendered prospective injunctive relief unavailable to the putative class. (*Id.*)

### D.  The Settlement Process

While conducting discovery, the parties also engaged in sustained, arm's length settlement negotiations over the course of more than one year. (Ex. 1 ¶ 39.) With the assistance of Michael E. Dickstein, a mediator with substantial experience in resolving employment class actions, the parties participated in a lengthy negotiation process culminating in the Settlement

---

[1] MetLife Press Release, *MassMutual to Acquire MetLife's Retail Advisor Force* (Feb. 29, 2016), https://www.metlife.com/about/press-room/index.html?compID=199315.
[2] MassMutual Press Release, *MassMutual Completes Acquisition of the MetLife Premier Client Group* (July 5, 2016), https://www.massmutual.com/about-us/news-and-press-releases/press-releases/2016/07/05/07/02/massmutual-completes-acquisition-of-the-metlife-premier-client-group.

Agreement. (*Id.* ¶ 39.) In May and September 2016, Mr. Dickstein conducted formal mediation sessions in New York, attended by Class Representatives, Class Counsel, and a number of management and legal representatives for MetLife. (*Id.* ¶ 39.) At the first mediation session on May 13, 2016, five Class Representatives sat across the table from numerous MetLife executives and gave candid and moving accounts of their experiences as MetLife FSRs. (*Id.* ¶ 39.) Then, on July 12, 2016, counsel for the parties met for an all-day session in Chicago to discuss the workforce data produced by MetLife. (*Id.* ¶ 39.) Six of the seven Class Representatives attended a second formal mediation session on September 13, 2016. (*Id.* ¶ 39.) Throughout this period and thereafter, Mr. Dickstein and counsel for all parties also conducted numerous telephone conferences to exchange information, analyses, and settlement proposals. (*Id.* ¶ 39.)

The negotiations were hard-fought, with counsel for all parties bargaining vigorously on behalf of their clients until the Settlement Agreement was executed on March 1, 2017. (*Id.* ¶ 39.)

**E.  The Terms of the Settlement**

MetLife has agreed to establish a $32.5 million Settlement Fund to benefit the class, and the settlement provides a unique method of allocating monetary awards to class members. (Dkt. 101-1 at 24-32.) Unlike most other discrimination settlements, monetary awards to the class will not be computed solely by formula based on objective factors such as weeks of employment. Instead, this settlement provides an Individual Claims Resolution Program ("ICRP") that will give class members the opportunity to reject a formulaic award and receive monetary awards based on their individual experiences and the recommendations of a pool of independent Neutrals. (*Id.* at 26-31.) Class Counsel will select the Neutrals in consultation with the Special Master and will provide the Neutrals with training and information regarding relevant MetLife policies and practices and the legal theories and statistical analyses developed during the

litigation. (*Id.* at 28-29.)  Class Counsel will also oversee the entire Individual Claims Resolution Program.

Settlement Class Members wishing to participate in the settlement will be required to submit one of two claim forms: a short claim form for those who want to receive an expedited monetary award based on objective factors, or a more detailed claim form for those who want the opportunity for an individualized assessment of their claims by independent Neutrals as part of the ICRP. (*Id.* at 27-28.) Settlement Class Members who submit the short claim form will forgo the opportunity for an individualized assessment of their claims, but Settlement Class Members who submit the detailed claim form will then have an additional chance to choose between (a) receiving the same expedited award based on objective factors they would have received if they had submitted the short claim form, and (b) continuing with the Individual Claims Resolution Process, including the opportunity for a 75-minute hearing with a Neutral who will recommend their monetary award based on their individual experiences and circumstances. (*Id.* at 28-29.) The Special Master will oversee the Settlement and review and approve the amount of each monetary award to ensure fairness and consistency. (*Id.* at 31.)

Class Counsel will assist Settlement Class Members by explaining the claims process and claim forms to them and helping them complete the claim forms and prepare for their Neutral interviews. (Ex. 1, ¶ 42.) Class Counsel will also ensure that an attorney attends each interview to assist the Class Member in presenting relevant aspects of his or her claim and answering the Neutral's questions. (*Id.* ¶ 42.)

Of the 690 confirmed and potential class members who received notice of this settlement, none objected and none opted out of the settlement. (Dkt. 114, Shawver Decl. ¶¶ 11-12.)

### Argument

Negotiated at arm's length and with the assistance of a professional mediator, this Settlement is fair, reasonable, and adequate, and it meets all the criteria for final approval under Federal Rules of Civil Procedure 23(a), (b), and (e). This Circuit recognizes a "strong judicial policy favoring settlements" of class action suits. *Torres v. Gristede's Operating Corp.*, No. 08–CV–8531, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010) (citing *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

In evaluating a class action settlement, courts in this Circuit first "review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators" and was "not a product of collusion." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013). The Settlement in this case has all the hallmarks of procedural fairness. The history of this litigation demonstrates that counsel for both sides vigorously represented their respective clients. *See Glover v. Crestwood Lake Section 1 Holding Corp.*, No. 89 CIV. 5386, 1991 WL 64172, at *4 (S.D.N.Y. Apr. 10, 1991). The Settlement was the product of extended, arm's length negotiations between financially sophisticated parties who were assisted by respected, experienced litigators on both sides and a professional mediator with substantial experience in mediating employment discrimination class actions. (Ex. 1 ¶ 39.) These circumstances "rais[e] a presumption that the settlement achieved meets the requirements of due process." *Beckman*, 293 F.R.D. at 474; *see also Dial Corp. v.*

6

*News Corp.*, 317 F.R.D. 426, 430 (S.D.N.Y. 2016); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366-67 (S.D.N.Y. 2002) (finding that negotiations occurring over several months and involving many in-person meetings between counsel warranted a presumption that settlement was fair).

### I. The Settlement Is Substantively Fair, Reasonable, and Adequate.

The Court must also review the Settlement for substantive fairness. In determining whether a class action settlement is substantively fair, reasonable, and adequate, courts in this Circuit consider a number of factors: (a) "the complexity, expense and likely duration of the litigation," (b) "the reaction of the class to the settlement," (c) "the stage of the proceedings and the amount of discovery completed," (d) "the risks of establishing liability [and] damages" and "of maintaining the class action through the trial," (e) "the ability of the defendants to withstand a greater judgment," and (f) "the range of reasonableness of the settlement fund in light of the best possible recovery [and] all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As *Grinnell* explained:

> The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.

495 F.2d at 462. Each *Grinnell* factor supports final approval of this proposed Settlement.

### A. Continued Litigation Would Be Complex, Expensive, and Protracted.

"[D]iscrimination class actions are notoriously complex and protracted." *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010). Absent a settlement, this case would be no exception. Plaintiffs allege both pattern or practice and disparate impact claims, which would have to be tried in multiple liability stages, followed

by a complex remedial stage. *See Wright v. Stern*, 553 F. Supp. 2d 337, 344 (S.D.N.Y. 2008) (describing multi-stage proceedings necessary for pattern or practice and disparate impact claims of discrimination by class of African American and Hispanic employees).

The class certification issue alone would likely consume enormous time and resources for the parties, this Court, and possibly reviewing courts as well. Both sides would be required to complete expert discovery regarding MetLife's workforce data and the existence and predominance of common issues of liability and damages. Even if a class were certified, MetLife likely would seek decertification and, if that proved unsuccessful, an interlocutory appeal under Rule 23(f). In a similar employment discrimination case, the parties litigated the class certification issue for seven years, including multiple class certification motions and rulings in the district court, two Rule 23(f) petitions, one interlocutory appeal, and two petitions for certiorari, before a class of African American brokers finally achieved partial certification of a liability class to pursue injunctive and declaratory relief. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir.) (reversing denial of class certification), *cert. denied*, 133 S. Ct. 338 (U.S. 2012), *on remand*, No. 05 C 6583, 2012 WL 5278555 (N.D. Ill. July 13, 2012) (certifying liability class under Rules 23(b)(2) and 23(c)(4)). In a similar class action, a district court in *Glover* summarized the difficulties of prosecuting race discrimination class actions with an analysis that applies with equal force to this case:

> Based on the history of the action thus far, it seems clear that this case could become a protracted, complex litigation, requiring significant time and expense for the parties, as well as judicial oversight for both this Court and the Court of Appeals. . . .Given the inevitable uncertainty and risk associated with proving disparate impact and intent at trial, as well as the highly favorable terms offered by the settlement, the proposed settlement offers both security and immediacy for the class members. Thus, the proposed class settlement agreement secures for the class substantial benefit, undiminished by further increased fees and expenses, without the delay, risk and uncertainty of continued litigation.

*See Glover*, 1991 WL 64172, at *5.

**B.  The Lack of Opposition to the Settlement Among Class Members Demonstrates Its Fairness to the Class.**

Far from opposing the settlement, the class has exhibited uncommon support for it. Not one class member has objected to the settlement, nor has any class member opted out. (Ex. 1 ¶ 46.)[3] Indeed, to date more than 60 class members have contacted Class Counsel to inquire about the settlement, and their response to it has been overwhelmingly positive. (*Id.*) The lack of opposition "is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright*, 553 F. Supp. 2d at 345 (approving settlement that drew only 13 objections and 3 opt-outs); *see also Mills v. Capital One, N.A.*, No. 14 civ. 1937, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) (approving settlement where no class member objected to the settlement and only 3 opted out); *Glover*, 1991 WL 64172, at *5 ("This total absence of objection by class members is persuasive evidence of the fairness of the settlement.").

**C.  The Substantial Investigation and Discovery Completed Gave Class Counsel Ample Basis for Evaluating the Settlement.**

Class Counsel have investigated this case extensively since they were first engaged in 2013, and they supplemented their investigation with substantial formal discovery produced by MetLife in the litigation. (Ex. 1 ¶ 37-38.) That discovery included years of workforce, compensation, and other data and policy information. (*Id.* ¶ 37-38.) In addition, Class Counsel engaged an expert to assist in analyzing these data. (*Id.* ¶ 39.) As a result, Class Counsel had ample information about the merits of the case to be able to negotiate and evaluate this settlement. (*Id.* ¶ 37-38__.) *Cf.* Here, without question Class Counsel had more than enough

---

[3] Class Counsel did receive one letter from a Class Member who believed that based on his experiences, the total dollar could be higher but the Class Member made clear that his comments were not intended to be a formal objection and that he fully intended to participate in the process.

information to assess the merits of the case and to negotiate a fair settlement on behalf of the class. This factor weighs heavily in support of approval of the settlement.

### D. The Class Faced Serious Risks in Establishing Liability and Damages and Obtaining and Maintaining Class Certification.

"In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.,* No. 09-cv-10211 LTS HP, 2011 WL 2208614, at *11 (S.D.N.Y. June 7, 2011), (quoting *Maley*, 186 F. Supp. 2d at 364). MetLife is a wealthy defendant represented by skilled lawyers intent on vigorously defending this case. Continued litigation of this action would be complex, lengthy, and risky for both sides. Liability and damages would be hotly contested, and Plaintiffs would face considerable risks should the litigation proceed. Employment discrimination cases generally fare poorly in the courts,[4] and race discrimination cases yield the lowest discrimination judgments and settlements.[5] Plaintiffs faced many challenges in establishing liability on the merits. As one court noted regarding a racial discrimination in a class action:  cases such as this have rarely

---

[4] Laura Beth Nielsen, *et al.*, *Individual Justice or Collective Legal Mobilization? Employment Discrimination Litigation in the Post Civil Rights United States*, 7 J. Empirical Legal Stud. 175, 196 (2010) (analyzing 15 years of data from federal employment discrimination suits and concluding that this litigation "seldom yields a substantial award for plaintiffs"); Kevin M. Clermont & Stewart J. Schwab, *Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse?*, 3 HARV. L. & POL'Y REV. 103-104 (2009) (based on 27 years of data, employment discrimination plaintiffs are less likely than other plaintiffs to prevail at trial or on appeal).
[5] Minna J. Kotkin, *Outing Outcomes: An Empirical Study of Confidential Employment Discrimination Settlements*, 64 WASH. & LEE L. REV. 111, 148 (2007) (empirical study of 1,170 confidential employment discrimination settlements, showing that settlements in race discrimination cases were significantly lower than in other discrimination cases, except for reverse discrimination cases brought by white plaintiffs); Wendy Parker, *Lessons in Losing: Race Discrimination in Employment*, 81 Notre Dame L. Rev. 889, 909-912 (2006) (concluding that plaintiffs alleging race discrimination fare worse than those alleging gender discrimination in judicial dispositions and settlements).

produced significant recoveries and are fraught with problems of proof, being largely based on statistical data." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997).

In addition, employers raise novel defenses.  For example, Wall Street firms have defended racial and gender disparities in broker compensation by claiming that their commission pay plans are "merit" or "production" systems immune from disparate impact liability under Title VII. *E.g.*, *Calibuso v. Bank of America*, 893 F. Supp. 2d 374, 392-94 (E.D.N.Y. 2012). While Plaintiffs disagree, these arguments can complicate the class certificate analysis.

MetLife's sale of Plaintiffs' business unit, which took effect on July 1, 2016, created another set of challenges for Plaintiffs. In the midst of litigation, all members of the putative class either (a) became independent contractors of an entirely new company (which they could not sue because of mandatory arbitration agreements with class action waivers) or (b) were forced to find new employment. Either way, MetLife would have likely asserted that their damages stopped accruing as of July 1, 2016; the class period was cut short on that date; and Plaintiffs' prayer for injunctive relief to reform the MetLife policies they challenged as discriminatory became moot.

Plaintiffs also face legal and factual hurdles in obtaining and maintaining a certified class. Employers routinely argue that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338 (2011), tightened the standards for certifying a class of employees alleging discrimination. In addition, legislation that passed the House of Representatives and is pending before the Senate might further complicate Plaintiffs' efforts to obtain and maintain a certified class. House Resolution 985 would (i) require Plaintiffs to prove that "each proposed class member suffered the same type and scope of injury as the named class representatives;" (ii) prohibit issue classes without a finding that common issues predominate over the entire case as a

11

whole; and (iii) provide automatic appeals of any class certification decision. H.R. 985 –

*Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017*,

https://www.congress.gov/ bill/115thcongress/house-bill/985?r=1.

"[T]he risk that the case might be not certified is not illusory and weighs in favor of the

Class Settlement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

MetLife has made clear that, absent this settlement, it would continue its vigorous opposition to

class certification. (Dkt. 54; Ex. 2, Preliminary Approval Transcript at 26-28.) Even if certified,

the class could well face a motion to decertify and/or an interlocutory appeal under Rule 23(f),

"which would require additional rounds of briefing and extensive delay. Settlement eliminates

the risk, expense, and delay inherent in this process." *Diaz v. E. Locating Serv. Inc.*, No. 1:10-

CV-04082, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010).

Without this settlement, the class would face more legal hurdles, a class certification

fight, a potential Rule 23(f) appeal, and more years of litigation before any class member could

potentially recover on his or her claim. In light of the complicated, uncertain, and lengthy

litigation facing class members, the prompt and outstanding monetary relief in this settlement is

in the best interests of the class.

### E. Given the Size of the Settlement Fund and the MassMutual Acquisition, MetLife's Ability to Withstand a Greater Judgment Is Irrelevant.

As discussed in detail below, the $32.5 million settlement fund in this case is larger than

the funds in any of the ten largest employment discrimination settlements of 2016. Accordingly,

MetLife's ability to withstand an even greater judgment does not mean the settlement is

inadequate or unfair. "[W]hile an ability to withstand a larger judgment might require

disallowance of an inadequate settlement, a defendant's financial position is largely irrelevant

when the settlement is ample." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433

(S.D.N.Y. 2014).

> ### F.  The Outstanding Monetary Relief of this Settlement Weighs Strongly in Favor of the Settlement.

The $32.5 million Settlement Fund in this case ranks among the largest class action

settlements in employment discrimination cases. Given the class size of 657 (Dkt. 114 ¶¶ 4, 10),

this settlement is more generous, both overall and on a per capita basis, than each of the ten

largest employment discrimination settlements of 2016:

| Case | Class Size | Fund (Millions) | Per Capita | Atty Fees (Millions) | Fee % |
|---|---|---|---|---|---|
| *Pan v. Qualcomm Inc.*, No. 16-cv-1885 (S.D. Cal.) | 3,290 | $19.5 | $5,927 | $5.78 | 24.6% |
| *Gonzalez v. Pritzker*, No. 10-cv-3105 (FM) (S.D.N.Y.) | 450,000 | $15.0 | N/A[6] | $8.33 | 55.5% |
| *Wellens v. Daiichi Sankyo*, No. 13-cv-0581 WHO (DMR) (N.D. Cal.) | 1,570 | $8.2 | $5,223 | $2.87 | 35.1% |
| *Cote v. Wal-Mart Stores, Inc.*, No. 15-cv-12945 (D. Mass.) | 1,200 | $7.5 | $6,250 | $1.88 | 25.0% |
| *Brand v. Comcast Corp.*, No. 11-cv-8471 (N.D. Ill.) | 410 | $7.21 | $17,585 | $2.81 | 39.0% |
| *Brown v. Medicis Pharm. Corp.*, No. 13-cv-1345 (D.D.C.) | 225 | $7.15 | $31,778 | $2.502 | 35.0% |
| *Aviles v. BAE Sys. Norfolk Ship Repair, Inc.*, No. 13-cv-418 (E.D. Va.) | 177 | $4.6 | $25,989 | $1.00 | 24.2% |
| *Coates v. Farmers Group, Inc.*, No. 15-cv-1913 (N.D. Cal.) | ~260 | $4.105 | $15,788 | $1.83 | 30.8% |
| *Price v. New Jersey Transit*, No. L-263-14 (N.J. Super. Ct.) | N/A | $3.65 | N/A | N/A | N/A |
| *Moore v. Publicis Groupe*, No. 11-cv-1279 (S.D.N.Y.) | 108 | $2.875 | $26,852 | $0.85 | 29.5% |

(Ex. 5, Seyfarth Shaw LLP, *13th Annual Workplace Class Action Litigation Report* 9, 33-34

(2017) ("Seyfarth Report").)[7]

---

[6] Instead of negotiating for monetary relief for the *Gonzalez* class, class counsel negotiated for programmatic relief valued at $5 million, plus $10 million to pay class counsel's fees and costs. 2016 WL 5395905, *2-4 (Sept. 20, 2016).

The MetLife settlement fund also compares favorably to other discrimination class action settlements against Wall Street firms, including *Calibuso v. Bank of America*, 299 F.R.D. 359, 362, 364 (E.D.N.Y. 2014) ($39 million fund for 4,298 female brokers, yielding per capita average of $7,914); *See also* Ex. 4, Coffee Decl. ¶15 (chart listing other class action settlements, including against Wall Street firms).

Although a trial of this case eventually might have resulted in a judgment larger than $32.5 million, the generous settlement fund "represents a compromise between the strengths of plaintiffs' case and the possible success of [MetLife's] defenses" that is both reasonable and favorable to the class. *Frank*, 228 F.R.D. at 186-87. Taking into account "the uncertainties of law and fact . . . and the concomitant risks and costs necessarily inherent in taking any litigation to completion," this settlement falls comfortably within the "range of reasonableness," if not at the upper end of that range. *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Moreover, this settlement's benefit to the class goes beyond the sheer size of the settlement fund. Unlike most other discrimination class action settlements, monetary awards to the class will not be computed by formula based solely on objective factors like weeks of employment. Instead, this settlement provides an Individual Claims Resolution Program that gives every class member the opportunity to receive a monetary award based on his or her individual experiences. (Dkt.101-1 at 27.) Assisted by Class Counsel, each class member will be able to discuss the details of those experiences in an interview with a trained Neutral for up to 75

---

[7] *See* class sizes and fees reported in *Pan*, Dkt. 21-1 at 8 (fee request, not yet approved) (Ex. 6); *Gonzalez*, 2016 WL 5395905 at *4; *Wellens*, Dkt. 189 ¶ 5 (Ex. 7); *Wellens*, 2016 WL 8115715, *3; *Cote*, Dkt. 70 at 17, Dkt. 83 at 5 (Ex. 8); *Brand*, Dkt. 163 at 1, 13 (Ex. 9); *Brown*, Dkt. 52 at 4, 6 (Ex. 10); *Aviles*, Dkt. 106 at 4, Dkt. 111 at 3 (Ex.11); *Coates*, Dkt. 140 at 5, 11-12, Dkt. 148 at 4 (fees not paid from fund, percentage calculated after combining fund and fee award) (Ex.12); *Moore*, Dkt. 610 at 14-16 (Ex. 13).

minutes. (*Id.* at 29.) An independent Special Master will oversee the Individual Claims

Resolution Program and review all monetary awards for fairness and consistency. (*Id.* at 31.)

      Although this allocation method requires Class Counsel to continue to invest substantial

fees and costs on the case after it has settled, it has two principal advantages over the typical

formulaic approach to class settlements. First, the Individual Claims Resolution Program ensures

class members that their monetary awards can and will be based on their individual

circumstances. Second, this program gives each class member the opportunity to be heard in a

private, non-adversarial forum by a Neutral who understands the job of an FSR and MetLife's

employment policies and practices. As this Court correctly noted:

> [I]n the context of an employment discrimination case, one of the most important
> things is for any plaintiff to feel that they have been heard by somebody and had
> someone carefully analyze the nature of their claim.

(Ex. 2 at 25.) This settlement gives unnamed class members a rare opportunity to be heard and to

receive monetary awards based on a careful analysis of their individual claims. (Ex. 3, Cohn

Decl. ¶ 3.)

## II. The Settlement Class Meets All the Requirements of Rule 23.

### A. The Settlement Class Satisfies the Requirements of Rules 23(a) and 23(b)(3).

      Plaintiffs request certification of the following settlement class:

> All African American and/or Black Financial Services Representatives ("FSRs")
> who were (1) employed by and/or affiliated with Metropolitan Life Insurance
> Company or (2) affiliated with New England Life Insurance Company in the
> United States at any time from May 15, 2011 through July 1, 2016.

A class may be certified under Rule 23(a) when "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a) . This class meets each of these requirements.

**Numerosity.** The proposed class includes 657 class members, which is more than sufficient to meet the numerosity requirement. (Dkt. 114 ¶¶ 4, 10.) When a class consists of forty or more members, numerosity is presumed. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006) (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995)); *see also Johnson v. Brennan*, No. 10 civ. 4712, 2011 WL 4357376, at *4 (S.D.N.Y. Sept. 16, 2011) ("Plaintiffs easily satisfy the numerosity requirement because there are approximately 394 class members.").

**Commonality.** Commonality is met where class claims "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL 3500655, at *9 (S.D.N.Y. July 15, 2014) (quoting *Wal-Mart*, 564 U.S at 350). This case presents numerous common questions of law and fact, including whether MetLife engaged in a pattern or practice of racial discrimination and whether the firm's policies and practices, including those governing teaming and the distribution of business opportunities and resources to FSRs, had an unlawful disparate impact on African Americans. *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012) ("If the teaming policy causes racial discrimination and is not justified by business necessity, then it violates Title VII as 'disparate impact' employment discrimination—and whether it causes racial discrimination and whether it nonetheless is justified by business necessity are issues common to the entire class and therefore appropriate for class-wide determination."); *Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-cv-0403, 2002 WL 2003206, at *1-2 (E.D.N.Y. Aug. 1, 2002) (finding commonality for class of 2,406 African

American employees alleging race discrimination).

**Typicality.** "Typicality 'requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Platinum & Palladium*, 2014 WL 3500655, at *9 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). The claims of the Class Representatives are typical of the class because they all are African Americans who were FSRs at MetLife and were subjected to and harmed by the same discriminatory policies and practices.

**Adequate Representation.** The Class Representatives will fairly and adequately protect the interests of the class, and they already have devoted significant time and effort to meeting with Class Counsel and participating in the litigation and settlement negotiations on behalf of the class. The Class Representatives also retained experienced counsel whom courts have regularly appointed as class counsel, including in discrimination class action lawsuits against other financial services firms. *E.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2012 WL 5278555, at *1; *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 328 F. Supp. 2d 865 (N.D. Ill. 2004); *Martens v. Smith Barney, Inc.*, 1998 WL 1661385 (S.D.N.Y. July 28, 1998) ; *Slaughter v. Wells Fargo,* Case No. 13-cv-6368 (N.D.Ill.).

**Rule 23(b)(3).** For Rule 23(b)(3) certification, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Those requirements are met here. This case challenges MetLife's class-wide policies and practices rather than any issues unique to particular class members. *See In re Platinum & Palladium*, 2014 WL 3500655, at *10 (finding predominance

17

requirement met where "the entire case . . . centers on the Defendants' alleged market manipulation"). Because Rule 23(b)(3) certification is proposed in the settlement context, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its Individual Claims Resolution Program. *See In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 195 & n.51 (S.D.N.Y. 2005) (holding that class action settlement mitigated predominance as well as manageability concerns); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (lauding the use of special masters to preside over individual damages proceedings as a solution to defendant's manageability concerns).

**B.   The Notice Provided to the Class Satisfies Due Process.**

A settlement must provide adequate notice to class members so they can make an informed choice about whether to opt out, object, and/or file a claim for a monetary award. Fed. R. Civ. P. 23(e)(1) . In this case, the Class Notices approved by the Court were clear, accurate, and satisfied due process. The Claims Administrator mailed the Class Notices to each of the 653 confirmed and 37 potential class members identified by MetLife, and it appears that more than 98% of them received the Notices. (Dkt. 114 ¶¶ 4-7.) The Claims Administrator also established a website from which visitors may download copies of the Settlement Agreement, the Amended Complaint, the Class Notices, and the Preliminary Approval Order. (*Id.* ¶ 8.)

On March 7, 2017, the Claims Administrator sent notices of the proposed Settlement to the Attorney General of the United States and the Attorneys General of the 39 states and the District of Columbia in which class members reside, as required by the Class Action Fairness

18

Act, 28 U.S.C. § 1715(d). (*Id.* ¶ 1-2.) No federal or state authority has expressed opposition to the settlement. (*Id.* ¶ 3.)

## <u>Conclusion</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the Settlement and certify the Settlement Class.

Respectfully Submitted,

STOWELL & FRIEDMAN, LTD.

By:____*/s/ Linda D. Friedman*_____
                    Lead Class Counsel

Linda D. Friedman
Suzanne E. Bish
George S. Robot
**STOWELL & FRIEDMAN, LTD.**
303 W. Madison, Suite 2600
Chicago, Illinois 60606
(312) 431.0888 (ph)
(312) 431.0228 (fax)

## CERTIFICATE OF SERVICE

I, Linda D. Friedman, an attorney, hereby certify that on June 14, 2017, I filed the

foregoing ***Memorandum In Support Of Plaintiffs' Motion For Final Approval Of Class Action***

***Settlement*** via the Court's CM/ECF system, which caused a copy of the same to be served upon

all counsel of record via ECF.


Respectfully submitted,

By: */s/ Linda D. Friedman*